UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARVEL JOHNSON,
    *Petitioner*,

v.

UNITED STATES OF AMERICA,
    *Respondent*.

No. 3:23-cv-01680 (KAD)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Marvel Johnson, ("Petitioner" or "Johnson") a formerly incarcerated individual, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. Johnson is not a citizen of the United States and faces deportation in the wake of his conviction for violating 18 U.S.C. § 1035(a)(2). He asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment insofar as his attorney did not properly advise him regarding the immigration consequences of his plea. He seeks to overturn his conviction. This claim is conclusively belied by the record. But regardless of the advice Johnson did or did not receive from his attorney, record evidence from Johnson's change of plea hearing and sentencing illustrates that he would have pled guilty irrespective of the immigration consequences. As a result, Johnson cannot demonstrate the prejudice required to prevail on a claim of ineffective assistance of counsel. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**BACKGROUND**

Johnson is a Jamaican citizen living without authorization in the United States. *United States v. Johnson*, 3:20-cr-00225 (JAM), Doc. #40 at 5. He was indicted in November 2020 and charged with two counts of making a materially false statement in connection with delivery of or payment for health care benefits in violation of 18 U.S.C. § 1035(a)(2). *Johnson*, 3:20-cr-00225

(JAM), Doc. #1 at 1-2. He was also charged with one count of violating 18 U.S.C. § 1015(c) by submitting a false birth certificate when trying to access the Connecticut Medicaid Program. *Id.* at 2-3. Johnson's attorney, Frank Riccio, negotiated a plea agreement whereby Johnson would plead guilty to one count of violating 18 U.S.C. § 1035(a)(2) and the remaining charges would be dismissed on motion of the Government. *Johnson*, 3:20-cr-00225 (JAM), Doc. #33 at 1, 8.

At the change of plea hearing before the Court, the Court and the parties discussed the immigration consequences of Johnson's plea at some length. The Court and Johnson had the following exchange:

> **THE COURT: . . . And you told me that you're not a U.S. citizen, so that makes it quite likely that you could be subject to being deported or removed from the country without an opportunity to come back into the United States. Do you understand that?**
>
> **THE DEFENDANT: Yes, sir.**
>
> **THE COURT: Okay. There's some fairly complicated immigration law there, but for present purposes, if you go ahead and enter a plea of guilty, you should be thinking that you very, very well and likely could be deported without any opportunity to come back into the United States. Do you understand that?**
>
> **THE DEFENDANT: Yes, sir.**

*Johnson*, 3:20-cr-00225 (JAM), Doc. #56 at 11. The Court later advised Johnson as follows:

> **THE COURT: You really need to, as I said before, proceed on the assumption that you would be deported or removed from the country. It may be you're not, if there's some sort of other argument you could raise. But for now you need to assume that would be the case in making your decision whether to enter a plea of guilty. Do you understand?**
>
> **THE DEFENDANT: Yes, Your Honor.**
>
> **THE COURT: Do you feel you've had enough time to talk to Mr. Riccio about that possible consequence?**
>
> **THE DEFENDANT: Yes, he did mention that.**

*Id.* at 21-22. In addition, Johnson's plea agreement included the following acknowledgement:

> The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. . . . [T]he defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. *The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.*

*Johnson*, 3:20-cr-225(JAM), Doc. #33 at 7. At the change of plea hearing, Johnson confirmed that he had read the agreement and discussed it with his lawyer. *Johnson*, 3:20-cr-225 (JAM), Doc. #56 at 12.

The immigration consequences of the guilty plea were also discussed at Johnson's sentencing. The Court pointed out that while its "judgment today would not involve an order of deportation or removal" it was nevertheless "quite possible that [Johnson] could be ordered removed and deported from the United States." *Johnson*, 3:20-cr-00225 (JAM), Doc. #57 at 9-10. Attorney Riccio similarly acknowledged "[a]gain, another sad reality is that once he enters the custody of the Bureau of Prisons, it's likely he will never leave, meaning the custody of the Bureau of Prisons, because he will likely be transported to the custody of the immigration authority." *Id.* at 40-41.

The Court ultimately sentenced Johnson to 12 months in prison followed by 3 years of supervised release. *Johnson*, 3:20-cr-00225 (JAM), Doc. #48. It appears that he was scheduled for release in November 2023, and a final order of deportation has been issued against him. Doc. #5 at 1, 15.[1] Johnson now contests the quality of the legal advice he received. He maintains that

---

[1] The record does not reflect Johnson's current location.

attorney Riccio never apprised him of the immigration consequences of his guilty plea, which he claims he discovered himself while incarcerated. Doc. #1 at 7-8. As a result, he has filed the instant petition for writ of habeas corpus via 28 U.S.C. § 2255, asserting ineffective assistance of counsel as a reason to vacate his underlying conviction. *Id.* at 8-10.

As evidence, Johnson attaches affidavits from himself and his wife speaking to the allegedly improper advice. Doc. #1-1 at 2-7. In his affidavit, Johnson further refers to text messages he received from Attorney Riccio that contain the inaccurate advice. *Id.* at 2-3. Johnson does attach some text messages from Attorney Riccio as an Exhibit, but they are not entirely consistent with his claims about their content. Doc. #5 at 3-5.[2]

## DISCUSSION

An individual on supervised release may seek to have his sentence vacated, set aside, or corrected if his "sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 959 (S.D.N.Y. 2018) (individuals on supervised release may pursue habeas relief under the federal habeas statute) (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). In determining whether to conduct an evidentiary hearing in a habeas case, courts review the materials offered by the petitioner and the relevant portions of the record in the underlying criminal proceeding. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Viewing those materials in the light most favorable to the petitioner, the Court then determines whether the petitioner may be able to establish a *prima*

---

[2] The government had indicated that the copies of these text messages filed on the docket are illegible. Doc. #8 at 9. The Court has access to the mailed originals, which are discernable. However, their content does not impact the outcome of this case.

*facie* case for relief. *Id.* If the petitioner has a plausible claim and there are material facts in dispute, the Court will hold a hearing on the claim. *Id.*

A claim of ineffective assistance of counsel is reviewed in light of the well-established, two-part standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show deficient performance—that counsel's conduct "fell below an objective standard of reasonableness" established by "prevailing professional norms"—and, second, a defendant must show that this deficient performance caused prejudice. *Id.* at 688, 694. In assessing the second part of this test, a court must consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018) (quoting *Strickland*, 466 U.S. at 694). When a defendant seeks to overturn a conviction following a guilty plea on the basis of ineffective assistance, he must show a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 363 (2017).

In this case, even if Johnson could establish that Attorney Riccio never advised him of the immigration consequences of his plea, which conduct would fall below an objective standard of reasonableness, the petition still fails.[3] As to the first prong, the Court first observes that Johnson's conviction was for an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(M) ("an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" is an

---

[3] To be clear, the record does not contain enough evidence to establish that Attorney Riccio performed deficiently. And much of the evidence relied upon by Johnson is contradicted by the plea agreement and the transcripts from his plea and sentencing.

aggravated felony).[4] A non-citizen convicted of an aggravated felony is subject to mandatory deportation, *see Lee*, 528 U.S. at 361-62, and the failure of such a defendant's attorney to so advise her client would constitute an objectively unreasonable performance. *See, e.g.*, *United States v. Al Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015) (summary order) ("We agree that, where the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness.").

Notwithstanding the above, Johnson cannot show any reasonable probability that he would have eschewed a guilty plea and gone to trial had he received proper advice. A defendant facing deportation might elect to "throw[] a 'Hail Mary' at trial" rather than accept a plea deal that will lead to his removal, even when "prospects of acquittal at trial [are] grim." *Lee*, 582 U.S. at 365, 368. But the Supreme Court has directed trial courts to examine "contemporaneous evidence" of the defendant's preferences at the time of the plea to determine if he would have gone to trial. *Id.* at 369. And here, that record evidence, detailed above, demonstrates that Johnson would have pled guilty regardless of the nature of the immigration advice Attorney Riccio provided him.

As discussed above, during Johnson's change of plea hearing, the Court advised Johnson "for present purposes, if you go ahead and enter a plea of guilty, you should be thinking that you very, very well and likely could be deported without any opportunity to come back into the United States." *Johnson*, 3:20-cr-00225 (JAM), Doc. #56 at 11. Johnson replied "Yes, sir." *Id.* The Court further advised Johnson that he needed to "*proceed on the assumption* that [he] would

---

[4] *Johnson*, 3:20-cr-00225 (JAM), Doc. #40 at 5 ("[T]he loss amount in [Johnson's] case is $150,380.83.").

be deported or removed from the country" if he pled guilty, a reality that Johnson again acknowledged. *Id.* at 21.

Moreover, Johnson admitted that he spoke with Attorney Riccio about immigration consequences prior to his change of plea hearing. After directing Johnson to proceed on the assumption that he would be deported, the Court asked Johnson "Do you feel you've had enough time to talk to Mr. Riccio about that possible consequence?" Johnson replied "Yes, he did mention that." *Id.* at 22.

And in his plea agreement, Johnson unequivocally affirmed that "He wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States. *Johnson,* 3:20-cr-225 (JAM), Doc. #33 at 7.

A defendant's sworn admissions at a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A district court is "entitled to accept a defendant's statements under oath at a plea allocution as true," *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997), and self-inculpatory statements made under oath at a plea allocution "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Indeed, Courts within the Second Circuit have consistently credited defendants' plea allocutions over subsequent statements made while attempting to withdraw a plea or vacate a conviction. *See, e.g., Hines v. Miller*, 318 F.3d 157, 159, 164 (2d Cir. 2003) (affirming district court's denial of habeas motion;

defendant's earlier motion to withdraw plea was rightly denied because his claims contradicted his statements during the plea colloquy).

In light of this evidence, Johnson cannot credibly claim that he would have gone to trial given more accurate advice than what he alleges he received. The Court informed Johnson that he had to operate under the assumption that he would be deported if he pled guilty, and admonished him twice of that near certain consequence. Johnson confirmed that he had read his plea agreement and that he understood its terms and had discussed its terms with his lawyer. Doc. #56 at 12. In his plea agreement, he acknowledged a desire to plead guilty regardless the immigration consequences. Johnson's belated and *post hoc* protestations to the contrary are unpersuasive when viewed alongside his contemporaneous actions.

In view of the undisputed evidence from his change of plea and sentencing hearings, Johnson has not established a *prima facie* case for ineffective assistance of counsel under part two of the *Strickland* test.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk of the Court shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 29th day of January 2025.

/s/*Kari A. Dooley*
Kari A. Dooley
United States District Judge